IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PENELOPE LINK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-6844 |
| | ) | |
| v. | ) | |
| | ) | COLLECTIVE ACTION COMPLAINT |
| INFORMATION RESOURCES, INC., | ) | |
| d/b/a IRI WORLDWIDE, | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, PENELOPE LINK, by and through her undersigned counsel of record, complains against Defendant, the INFORMATION RESOURCES, INC., d/b/a IRI WORLDWIDE (hereinafter, "Defendant" or "IRI"), and in so doing alleges, upon information and belief, except as to allegations particularly pertaining to herself, which are based on personal knowledge, the following:

**INTRODUCTION AND NATURE OF ACTION**

1.  According to data obtained by payscale.com, in 2020, women make only $0.81 for every dollar a man makes.[1] As Equal Pay Trailblazer Lilly Ledbetter once said, "*unequal pay hurts women. It hurts their families. And it hurts us all. You and I have to continue fighting for equal pay for equal work. I get up each day with that on my mind, because I need to make a difference.*"

2.  Here, like Lilly Ledbetter and many before her, Plaintiff is fighting. Plaintiff is a 62 year-old female who alleges that she, along with other female employees of Defendant, is paid less than male employees in the same or substantially similar role, in violation of the Equal Pay

---

[1] "The State of The Gender Pay Gap in 2020;" https://www.payscale.com/data/gender-pay-gap#section02

1

Act of 1963, 29 U.S.C. §§ 206(d) and 215 ("the EPA"), and the Illinois Equal Pay Act of 2003, 820 ILCS 112/ *et. seq* ("the IEPA"). Plaintiff further alleges that she has been subjected to ongoing and continuous retaliation for reporting the unlawful pay disparity to HR and the Equal Employment Opportunity Commission ("EEOC").

3. Plaintiff contends that from July 2020 through the present, she has been subjected to ongoing and continuous retaliation for engaging in statutorily protected activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII").

4. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, severe and egregious injury and damage as alleged herein.

5. All allegations and claims are pled in the alternative to the extent such an interpretation is necessitated by law, required for proper construction under the law, and permitted under federal law.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §§ 1367. This action is authorized and instituted pursuant to the Equal Pay Act of 1963, 29 U.S.C. §§206(d) and 215(a)(2), 29 U.S.C. §216(b), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq., and the Illinois Equal Pay Act of 2003, 820 ILCS 112/ *et. seq.*

7. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(B) & (C) because Plaintiff was employed in this judicial district, Plaintiff currently resides in this judicial district, and Defendant has offices here, maintains personnel records here, and engages in or ratifies illegal conduct here adversely affecting Plaintiff and the putative EPA collective.

2

## CONDITIONS PRECEDENT TO FILING TITLE VII SUIT

8. Plaintiff has fulfilled all conditions precedent to the institution of this action under the Act of Congress known as Title VII.

9. Plaintiff filed her charge of discrimination within 300-days of the last discriminatory act. (See *Exhibit. A*, EEOC Charge).[2]

10. Plaintiff then filed this lawsuit within 90-days of receiving her notice of right to sue from the Equal Employment Opportunity Commission. (See *Exhibit. C*, EEOC Notice of Right to Sue).

11. Plaintiff's claims arising under the EPA and IEPA, do not require administrative exhaustion and are subject to the statute's three-year statute of limitations for a willful violation.

## PARTIES

12. **Plaintiff:** Plaintiff is a 62-year-old female citizen of the United States and Kane County, Illinois.

13. Plaintiff has been employed by Defendant since December 2016. She remains employed by Defendant as a "Retail Client Solutions Consultant." At all relevant times herein, Plaintiff has met or exceeded Defendant's legitimate business expectations.

14. **Defendant:** Defendant, Information Resources, Inc., d/b/a IRI Worldwide, with corporate offices located at 150 N. Clinton Street, Chicago, IL 60661, integrates the world's largest set of otherwise disconnected purchase, media, social, causal and loyalty data to help CPG, retail, over-the-counter health care and media companies grow their businesses.

---

[2] Plaintiff filed her original Charge of Discrimination with the EEOC, alleging gender discrimination and EPA violations, on or around July 24, 2020. The charge is attached hereto as "Exhibit A." Plaintiff later amended her Charge of Discrimination to include allegations of retaliation. The amended charge is attached hereto as "Exhibit B."

15. Defendant has acted directly or indirectly as an employer and has continuously been an employer within the meaning of the EPA, the IEPA and Title VII. At all times material to this action, the Defendant has employed fifteen (15) or more employees for each working day of twenty (20) or more calendar weeks and is an employer within the meaning of the EPA, the IEPA and Title VII.

## COMMON ALLEGATIONS

16. Plaintiff incorporates by reference the allegations contained in her attached Charge of Discrimination. (See *Exhibit A and Exhibit B)*.

17. Plaintiff is a 62-year-old female.

18. In or around December 2016, Plaintiff was hired by Respondent as a "Retail Client Solutions Consultant," and Plaintiff presently holds the same position.

19. Plaintiff is highly skilled, qualified, and dedicated employee with 35 years of experience in the industry and who, at all relevant times herein, has met or exceeded Respondent's legitimate business expectations. In fact, Complainant is regarded as a "*Key Performer*" and "*critical to the success of [Respondent's] $53M Costco business. . .*"

20. Plaintiff and her male co-worker, Matthew Sherman (hereinafter, "Matt") share responsibility of signing new vendors totaling approximately $5M of new leads per year for Respondent's Costco account, which is valued at approximately $55M.

21. Plaintiff and Matt utilize an alpha sort, which has Matt responsible for sales for any vendor between A and K and Plaintiff responsible for any vendors between L and Z.

22. The alpha sort has existed since December 2016, when Plaintiff was hired and assumed the responsibility from an individual named Suzanna DeLeon.

23. From December 2016 through February 2020, Plaintiff and Matt reported to Christene Salinas (hereinafter, "Christene"). Despite working the same account, Plaintiff has consistently outperformed Matt by bringing several hundred thousand dollars more in competitive revenue.

24. In or around February 2020, Plaintiff and Matt began reporting to Senior Vice President Cindi Harper (hereinafter, "Cindi").

25. In or around February 2020, Cindi told Plaintiff "*you should have been promoted 2 years ago,*" and began the process of executing a promotion for Plaintiff to "Consultant II."

26. As part of the promotion, Plaintiff was to receive a substantial salary increase beginning April 1, 2020. Plaintiff did not receive any salary increase until July 17, 2020.

27. Upon information and belief, Plaintiff still earns less than her male counterpart, Matt, despite the "promotion."

28. On or around July 8, 2020, Plaintiff received an email from her former supervisor, Christene, which contained a "Balanced Scorecard" that had salary information of several employees. The email revealed that since she began working for Defendant in December 2016, Plaintiff has been paid substantially less in annual base salary than Matt.

29. Further, the information Plaintiff received revealed that because Matt has a higher base salary than Plaintiff, his actual annual merit increase, although lower in percentage (2.60%) is actually higher in value than Plaintiff's merit increase (2.75%).

30. Plaintiff was shocked when she reviewed the numbers and identified the extreme pay disparity. Plaintiff is highly qualified for her role, and has a Bachelors' Degree, a Masters' Degree and years of experience working with Fortune 500 companies. Contrarily, Matt, who has the same job title and responsibilities as Plaintiff, is far less qualified. Matt has a degree in

5

Saxophone and only has previous experience as a newspaper ad salesman, selling used car advertisements, and working in a wedding band.

31. On or around July 10, 2020, Plaintiff called Cindi to report her concerns over the pay disparity. Cindi stated that she did not think there was anything that could be done, but that she would reach out to HR.

32. Several minutes later, HR Director Lisa Schuchart left Plaintiff a voice message and set up a meeting for July 14, 2020 at 9:00am.

33. The very same day Plaintiff reported to Lisa, July 10, 2020, Plaintiff began receiving harassing phone calls from members of the IRI Gateway team, asking if Plaintiff was "experiencing stress issues and seeing a professional for her psychological issues."

34. Team members also told Complainant that her Supervisor, Christene, was "extremely concerned about [Plaintiff's] emotional issues and mental state."

35. On July 14, 2020 Plaintiff spoke to HR regarding the pay disparity. HR responded that Plaintiff was "*incorrect*" and that despite whatever Plaintiff may have "*heard*," Plaintiff and Matt are "*closely compensated.*"

36. During the same call, Plaintiff told HR that she had actually received an email containing the pay information from Christene, and Plaintiff asked HR to increase her salary to match Matt's salary.

37. HR told Plaintiff that IRI "*could not and would not increase [Plaintiff's] salary at this time.*"

38. After the call, Plaintiff sent a 7/20/2020 meeting request to Lisa Schubart to follow-up on the status of the pay disparity between Plaintiff and her less-qualified, male counterpart.

39. On or around July 20, 2020, Plaintiff spoke to Lisa Schubart again. During the conversation, Lisa indicated that Defendant "*cannot pay employee counterparts equally, but that [Defendant] was looking at 'creative' options moving forward.*" Lisa Further indicated that she would follow up with Plaintiff in a month or so.

40. On or around July 24, 2020, Plaintiff filed a Charge of Discrimination with the EEOC alleging gender discrimination and violations of the EPA. (*See Exhibit A*).

41. Since reporting the pay disparity to HR/management and filing her Charge of Discrimination, Plaintiff has been told she has "emotional issues," left out of critical meetings, excluded from important conference calls, criticized about her performance and denied access to information about Costco account updates.

42. Plaintiff's direct supervisor, Cindi, continues to make changes to policies and process steps established and routinely followed from 2015 and without articulating the changes made to Plaintiff.

43. On or around September 10, 2020, Cindi requested a meeting with Plaintiff to discuss her "poor" work performance during the preceding 60 days, despite the fact that Plaintiff exceeded her targets, received a promotion and praise for her outstanding performance.

44. During the meeting, Cindi attributed several "customer complaints" to Plaintiff; however, those complaints were actually about Plaintiff's male counterpart, Matt, who is in charge of vendors A-K.

45. On or around October 2, 2020, Complainant received an email from a recruiter, which invited Plaintiff to apply for her position at IRI. Plaintiff forwarded the email to IRI and explained that she was very surprised to see her position advertised because she had been assured by HR that her job was not in jeopardy.

46. HR quickly back tracked and assured Plaintiff that the posted position was likely an "error."

47. Despite numerous attempts by Plaintiff to discuss the allegations contained herein, HR, nor any member of management, has not followed-up with Plaintiff regarding the nearly four years of pay disparity Plaintiff uncovered in or around July 2020.

48. To date, the nearly four-year pay disparity has not been remedied by Defendant. Plaintiff continues to earn substantially less pay than Matt, even though the two share the same title and job responsibilities.

49. Defendant has discriminated against a class of female employees by engaging in a pattern and practice of paying female employees considerably less than male employees with the same or substantially similar job title and responsibilities.[3]

50. There is no legitimate, non-discriminatory, non-retaliatory basis for Defendant's decision to pay Plaintiff and the putative class of female employees less than less-qualified, male employees.

51. Defendant is aware that the illegal, discriminatory and retaliatory actions described herein violate state and federal law. Defendant is knowingly and intentionally violating state and federal law.

52. As a direct and proximate result of the discrimination alleged herein, Plaintiff has suffered severe and egregious injury and damages.

---

[3] Upon information and belief, female employees are paid less in annual base salary, merit increases and bonus/commission structure ("management incentive plan"). Upon Plaintiff's hire, Defendant promised Plaintiff that her "annual target incentive is 15%; however, despite her designation as a "key performer," Plaintiff has never received the 15% incentive. Upon information and belief, Matt has consistently received the full incentive since his hire in or around October 2016.

53. Defendant continues to retaliate against Plaintiff for reporting the unlawful pay violations based on sex and in violation of the EPA, IEPA and Title VII.

54. All allegations and claims are pled in the alternative to the extent such an interpretation is necessitated by law, required for proper construction under the law and permitted under federal and state law.

## COLLECTIVE ACTION ALLEGATIONS

55. Plaintiff's Cause of Action under the EPA is being prosecuted as a collective action pursuant to the EPA and IEPA.

56. Plaintiff's EPA claims are subject to Section 16(b) of the FLSA. 29 U.S.C. §216(b). Under Section 16(b) FLSA violation claims are brought and maintained as an "opt-in" Collective Action. *Id.* Under Section 16(b), the EPA Collective is defined as:

> "Plaintiff and all current and former female employees of Defendant who have been paid less than male counterparts with the same or substantially similar job title and duties, at any time from three (3) years prior to the date of commencement of this action through the date of judgment in this action" (the "putative EPA Collective" and "Collective Period," respectively).

Excluded from the putative Collective are all employees Defendant who do not opt-in and Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Collective period has had, a controlling interest in Defendants and the Judge to whom this case is assigned and any member of the Judge's immediate family.

57. Plaintiff incorporates by reference the allegations from the preceding paragraphs, including those alleging common patterns, practices, and/or policies by Defendant resulting in unlawful discrimination, as fully set forth herein.

58. Plaintiff alleges claims under the Equal Pay Act on both an individual basis and on behalf of a collective of female employees who have been, are now or will be employed by Defendant at any time during the applicable liability or statute of limitations periods, up to and including the date of any judgment in this case (the "putative EPA Collective").

59. As such, the systemic discriminatory practices that disproportionately affect female employees' compensation as compared to similarly situated men at IRI include, *inter alia*:

    a. Discretionary hiring practices that disfavor female employees;

    b. Discretionary compensation policies that disfavor female employees, including base salary and bonus/commission structure;

    c. Discretionary performance evaluation systems that disfavor female employees; and

    d. Discretionary promotion systems that disfavor female employees.

60. This discrimination is intensified and perpetuated by Defendant's repeated failures regarding the ability to prevent, address, properly investigate and/or take remedial action when female employees complain about discrimination and pay disparity.

56. Upon information and belief, Defendant subjected, and continues to subject, female employees at all levels to such unequal pay, including, but not limited to, consultants, principals, vice presidents, and presidents.

57. Defendant's systemic discrimination against Plaintiff and the putative EPA Collective is continuing in nature.

58. Defendant's discrimination against Plaintiff and the putative EPA Collective is the result of common patterns, practices and/or policies, and acquiescence to and ratification of such

patterns, practices and/or policies. Plaintiff's claims are essentially the same as those of the putative EPA Collective members.

59. The putative EPA Collective is readily ascertainable, and the names and addresses of the EPA Collective members are readily ascertainable from Defendant's records and files.

60. Common questions of law and fact predominate with respect to Plaintiff and the putative EPA Collective, who were subjected to substantially similar Company employment patterns, practice and/or policies.

## COUNT I

### VIOLATION OF THE
### EQUAL PAY ACT OF 1963, 29 U.S.C §206(d) AND 215(a)

61. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

62. The claims brought herein under the EPA, 29 U.S.C. § 206 *et. seq.*, are brought on behalf of Plaintiff and all members of the putative EPA Collective.

63. From December 2016 through the present, Defendant was and is subject to the provisions of the EPA. In an ongoing and continuous manner, Defendant required Plaintiff and the members of the putative EPA Collective to perform the same or substantially the same job position as male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment, and paid Plaintiff and the members of the putative EPA Collective at a rate of pay, including salary and bonus, less than such male employees. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a factor other than gender.

64. Defendant engaged in patterns, practices and/or policies of employment that discriminated against Plaintiff and the members of the putative EPA Collective on the basis of their gender and by paying Plaintiff and the putative EPA Collective members a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishments.

65. To date, the nearly four-year pay disparity has not been remedied by Defendant. Plaintiff, and members of the putative EPA Collective, continue to earn substantially less pay than male employees who share the same title and job responsibilities.

66. There is no legitimate, non-discriminatory basis for Defendant's decision to pay Plaintiff and the putative EPA Collective of female employees less than male employees.

67. Plaintiff and the putative EPA collective have suffered, and continue to suffer, severe injury and damage as a result of Defendant's failure to remedy the wage disparity uncovered by Plaintiff in July 2020.

68. Plaintiff and the members of the putative EPA Collective are further entitled to liquidated damages, reasonable costs and attorneys' fees.

## COUNT II

### UNLAWFUL RETALIATION FOR EXERCISE OF RIGHTS UNDER THE EQUAL PAY ACT OF 1963, 29 U.S.C §206(d) AND 215(a)

69. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

70. Plaintiff complained about, reported, opposed and protested Defendant's unlawful sex discrimination and pay practices in violation of Title VII, the EPA and the IEPA, as alleged herein.

71. On or around July 24, 2020, Plaintiff filed a charge of discrimination with the EEOC. (See *Exhibit A)*.

72. Since reporting to HR in early July 2020 and filing a charge of discrimination with the EEOC, Defendant has subjected, and continues to subject, Plaintiff to ongoing and continuous retaliation in violation of the EPA.

73. There is no legitimate, non-retaliatory explanation for Defendant's unlawful conduct.

74. Defendant's conduct alleged herein directly and proximately caused Plaintiff to suffer great mental anguish, humiliation, degradation, embarrassment, physical, and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## COUNT III

### VIOLATION OF THE ILLINOIS EQUAL PAY ACT OF 2003, 820 ILCS 112/ *et. seq.*

75. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

76. The claims brought herein under the IEPA, 820 ILCS 112/ *et. seq.*, are brought on behalf of Plaintiff and all current and former Illinois employees, who are members of the broader putative EPA Collective.

77. During the relevant time period, Defendant was subject to the provisions of the IEPA. From December 2016 through the present, Defendant required, and still requires, Plaintiff and the members of the putative EPA Collective to perform the same or substantially the same job position as male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment, and paid Plaintiff and the members of the putative EPA Collective at a rate of pay, including salary and bonus, less than such male employees. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a factor other than gender.

78. Defendant engaged in patterns, practices and/or policies of employment that discriminated against Plaintiff and the members of the putative EPA Collective on the basis of their gender and by paying Plaintiff and the putative EPA Collective members a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishments.

79. To date, the nearly four-year pay disparity has not been remedied by Defendant. Plaintiff, and members of the putative EPA Collective, continue to earn substantially less pay than male employees who share the same title and job responsibilities.

80. There is no legitimate, non-discriminatory basis for Defendant's decision to pay Plaintiff and the putative EPA Collective of female employees less than male employees.

81. Plaintiff and the putative EPA collective have suffered, and continue to suffer, severe injury and damage as a result of Defendant's failure to remedy the wage disparity uncovered by Plaintiff in July 2020.

82. There is no legitimate, non-discriminatory basis for Defendant's decision to pay Plaintiff and the putative EPA Collective of female employees less than male employees.

83. Plaintiff and the putative EPA collective have suffered, and continue to suffer, severe injury and damage as a result of Defendant's failure to remedy the wage disparity uncovered by Plaintiff in July 2020.

84. Plaintiff and the members of the putative EPA Collective are further entitled to liquidated damages, reasonable costs and attorneys' fees.

## COUNT IV

### UNLAWFUL RETALIATION FOR EXERCISE OF RIGHTS UNDER THE ILLINOIS EQUAL PAY ACT OF 2003, 820 ILCS 112/

85. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

86. Plaintiff complained about, reported, opposed and protested Defendant's unlawful sex discrimination and pay practices in violation of Title VII, the EPA and the IEPA, as alleged herein.

87. Defendant has subjected Plaintiff to ongoing retaliation for reporting unlawful pay practices in violation of 820 ILCS 112/10(b) since July 2020.

88. There is no legitimate, non-retaliatory explanation for Defendant's unlawful conduct.

89. Defendant's conduct alleged herein directly and proximately caused Plaintiff to suffer great mental anguish, humiliation, degradation, embarrassment, physical, and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## COUNT V

### UNLAWFUL RETALIATION FOR EXERCISE OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. 2000e *et seq*.

90. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

91. All conditions precedent to Count V have been satisfied.

92. Plaintiff complained about, reported, opposed and protested Defendant's unlawful sex discrimination and pay practices in violation of Title VII, the EPA and the IEPA, as alleged herein.

93. On or around July 24, 2020, Plaintiff filed a charge of discrimination with the EEOC. (See *Exhibit A)*. On or around October 16, 2020, Plaintiff filed an amended charge of discrimination alleging retaliation for engaging in statutorily protected activity. (See *Exhibit B*).

94. Defendant has subjected Plaintiff to ongoing retaliation for reporting unlawful pay practices, on the basis of gender, and in violation of Title VII, since July 2020.

95. On or around July 10, 2020, after Plaintiff reported the pay disparity to HR, Plaintiff began receiving harassing phone calls from members of the IRI Gateway team, asking if Plaintiff was "experiencing stress issues and seeing a professional for her psychological issues."

96. Team members also told Complainant that her Supervisor, Christene, was "extremely concerned about [Plaintiff's] emotional issues and mental state."

97. Since reporting the pay disparity to HR/management and filing her Charge of Discrimination, Plaintiff has been told she has "emotional issues," left out of critical meetings, excluded from important conference calls, criticized about her performance and denied access to information about Costco account updates.

16

98. Plaintiff's direct supervisor, Cindi, continues to make changes to policies and process steps established and routinely followed from 2015 and without articulating the changes made to Plaintiff.

99. On or around September 10, 2020, Cindi articulated her concerns regarding Plaintiff's "poor" work performance during the preceding 60 days, despite the fact that Plaintiff exceeded her targets, received a promotion and praise for her outstanding performance. Notably, prior to reporting her concerns regarding unequal pay to HR, Plaintiff had never received criticism for her performance.

100. Cindi also attempted to attribute several "customer complaints" to Plaintiff; however, those complaints were actually about Plaintiff's male counterpart, Matt, who is in charge of vendors A-K.

101. On or around October 2, 2020, Plaintiff received a notification from a recruiter that IRI was hiring for Plaintiff's position.

102. There is no legitimate, non-retaliatory explanation for Defendant's unlawful conduct.

103. Defendant's conduct alleged herein directly and proximately caused Plaintiff to suffer great mental anguish, humiliation, degradation, embarrassment, physical, and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Penelope Link, individually and on behalf of the putative EPA collective, respectfully requests this Court to grant the following relief:

104. Acceptance of jurisdiction of this cause;

105. An injunction and order permanently restraining Defendant from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

106. An order directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

107. Designate this action as a collective action on behalf of the proposed EPA and IEPA Collective Plaintiffs (asserting EPA and IEPA claims);

108. Designate Plaintiff as the representative of the EPA and IEPA actions;

109. Toll the statute of limitations on the claims of all members of the EPA Collective and IEPA Collective from the date the original complaint was filed until the Collective members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Plaintiffs;

110. Damages sufficient to compensate Plaintiff for her injuries;

111. Emotional Distress Damages;

112. Punitive damages;

113. Liquidated damages;

114. Pre-judgment and post-judgment interest;

115. Reasonable attorney's fees;

116. An award of litigation costs and expenses; and

117. Any and all other relief that this Honorable Court may deem just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  November 18, 2020                    Respectfully submitted,

                                                    **PENELOPE LINK**

                                                    **FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**

/s/Elizabeth C. Chavez
Elizabeth C. Chavez Esq. (#6323726)
Kathleen C. Chavez, Esq. (#06255735)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite #200
Geneva, Illinois 60134
Telephone: (630) 232-7450
ecc@fmcolaw.com
kcc@fmcolaw.com

Ted Meyers Esq.
MEYERS & FLOWERS
3 N. Second Street, Suite #300
St. Charles, IL 60174
Telephone: 630-232-6333

*Attorneys for Plaintiff*